UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re Peter E. Jokiel, | Bankruptcy No. 09-B-27495 |
| Debtor. | Chapter 7 |
| | Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the Trustee's motion to compel turnover by the Debtor of a severance payment and objection to claim of exemption in such payment. For the reasons set forth herein, the Court finds that $699,023.33 of the $735,000 severance payment received by the Debtor constituted property of the estate not subject to an exemption properly claimed by the Debtor, and the Debtor shall deliver such amount to the Trustee in accordance with 11 U.S.C. §542(a).

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

### FACTS AND BACKGROUND

The following facts and procedural history are taken from the Trustee's Objection to Debtor's Claimed Exemption of Severance Payment Proceeds and Motion to Compel Turnover, the Debtor's response, the Trustee's reply, the Debtor's sur-reply, the Trustee's supplement and the Debtor's

Page 1 of 12

response to supplement, and all attachments thereto.

The Debtor filed for protection under Chapter 7 of the Bankruptcy Code with this Court on July 29, 2009. As of that date, he was Executive Vice President and Chief Financial Officer for Specialty Underwriters' Alliance, Inc. ("SUA"), a position he had held since at least November 2003. His most-recent employment agreement, dated November 19, 2003, provided for a term of employment through December 31, 2009, with automatic annual extensions thereafter unless the company provided a written notice at least 15 months prior to the then-current termination date. The employment agreement also contained a severance provision, whereby if he was terminated without cause he was entitled to a lump sum payment of 225% of his annual base salary, if before December 31, 2009, or 150% of the base salary if on or after January 1, 2010. If he was terminated within 24 months of a change in control of SUA, he was entitled to a lump sum severance payment of three times his annual base salary, if before December 31, 2009, or two times the base salary if on or after January 1, 2010, plus all unvested or restricted stock options, stock awards or other equity-based compensation would become fully vested and exercisable. The agreement provided that, as a condition to receiving any severance payment, the Debtor would have to sign a general release of any claims against SUA or its affiliates. Additionally, the employment agreement contained a non-compete provision, whereby the Debtor agreed not to engage, directly or indirectly, in any activity in competition with SUA or its affiliates in the business of insurance or to solicit any customer or employee of SUA or its affiliates for two years if terminated in connection with a change of control, two years if the Debtor resigned (or 15 months if he resigned but gave at least 9-months' notice), or one year if terminated for any other reason.

Tower Group, Inc. entered into a merger agreement with SUA, dated as of June 21, 2009, a little over one month before the Debtor's petition date, but the merger was not consummated until November 13, 2009, three-and-a-half months after the petition date. On or about November 13, 2009, the post-merger entity terminated the Debtor, effective February 28, 2010, triggering the right to a 'change in control' severance payment, since it occurred less than 24 months after the merger. The Debtor signed a release of claims on November 13, 2009, in exchange for the vesting of unvested stock options and deferred stock awards and a lump sum of $1,215,000 minus withholdings and deductions.[1]

The Trustee, noting that the severance provisions were contained in an employment agreement that existed as of the petition date, contends that the severance payment constitutes property of the Debtor's estate, and filed a motion on June 9, 2010, seeking turnover of all severance payments received by the Debtor.[2] In response, the Debtor, noting that the merger and termination did not occur until several months after the petition date, contends that the severance payments constitute "earnings from services performed by an individual debtor after the commencement of a case," and therefore are excluded from the estate under 11 U.S.C. §541(a)(6).

## DISCUSSION

### A. Property of the Estate and the Exclusion for Earnings From Post-petition Services

Section 541(a)(1) of the Bankruptcy Code provides that, with limited exceptions, "all legal

---

[1] The parties have not discussed whether such release of claims was effective to release any pre-petition claims which would constitute property of the estate, since the release was signed post-petition and apparently without leave of the Court.

[2] The Trustee is apparently still investigating the stock options and deferred stock awards, and expressly reserved the right to seek turnover of such assets in a later motion.

or equitable interests of the debtor in property as of the commencement of the case" constitute property of the bankruptcy estate. The 7th Circuit Court of Appeals has noted the broad reach of this provision, noting that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993). However, Section 541(a)(6) contains an express exception, exempting "earnings from services performed by an individual debtor after the commencement of the case." The Trustee argues that the Debtor's right to a severance payment was a contingent interest as of the petition date, since it was provided for in an employment agreement in existence as of the petition date. In contrast, the Debtor argues that the severance payment constituted compensation for post-petition services. The Debtor notes that he would not have been entitled to severance if he quit before termination, and he had not been terminated as of the petition date. Instead, he had to continue working for the four months until he was terminated to be eligible for the severance payment. He also argues that as of the petition date he was not aware that he would be fired in the future. Additionally, the Debtor notes that under the employment agreement he is bound by the non-compete provision for two years from the date of his termination, and argues the severance payment is at least in part compensation for that covenant not to engage in activities in competition with SUA.

In Rau v. Ryerson (In re Ryerson), the Ninth Circuit Court of Appeals found that at least a portion of the right to a lump sum severance payment provided for by a pre-petition employment contract constituted property of the estate even where the debtor was not terminated until eight-and-a-half months after the petition date and where the agreement required that the debtor still be employed and in good standing at the time of termination to receive the severance. 739 F.2d 1423

(9th Cir. 1984). The court, citing the pre-Bankruptcy Code case of Segal v. Rochelle, 382 U.S. 375, 380, 86 S. Ct. 511, 515 (1966), held that the test for whether a post-petition payment of compensation on a pre-petition employment contract was excluded as 'earnings from post-petition services' was whether the payments "are 'sufficiently rooted in the pre-bankruptcy past' as to be included within the bankruptcy estate." 739 F.2d at 1426. The Seventh Circuit Court of Appeals has acknowledged this standard. In a case dealing with the allocation of a tax refund received post-petition between pre- and post-petition services, the court noted that "courts still refer in the era of the Bankruptcy Code [to the rule under the old Bankruptcy Act, which] defines the bankruptcy estate to include property that is 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start.'" In re Meyers, 616 F.3d 626, 628 (7th Cir. 2010) (quoting Segal, 382 U.S. at 380). Therefore, the key issue is whether the severance payment is "rooted" in the Debtor's pre-petition or post-petition services. The Trustee bears the burden of establishing a *prima facie* case for turnover. In re Meyers, 616 F.3d 626, 629 (7th Cir. 2010). Once a *prima facie* case is established, the debtor must provide a reason for going forward with the case, but the ultimate burden of persuasion remains with the trustee at all times. Id.

The Court finds that the Trustee has met his burden of proving that the majority of the severance payment is "sufficiently rooted in the pre-bankruptcy past" that it constitutes property of the estate under Section 541(a), and does not constitute earnings for post-petition services. The right to the severance payment, including its amount, was clearly established as of the petition date. If the change in control event and termination had occurred on or before the petition date, the Debtor would have been entitled to a severance payment of the same size as the one he received. Therefore,

while he had to continue working in order to maintain his right to severance, that additional work did not increase the size of the severance, nor was its size affected by the quality of his work during that period.[3] Rather than increase with the length of service, the severance right actually decreased over time, decreasing by one-third after December 31, 2009. The Debtor had worked under the employment agreement for nearly 6 years as of the petition date, and only a half-year remained of the original term of the agreement. This tends to indicate that the purpose of the severance payment was more as an incentive for the Debtor to enter into the employment agreement than as an incentive for him to continue working. Additionally, the Debtor received separate compensation under his regular salary for the work he performed during the four months post-petition. Therefore, the severance payment did not directly constitute "earnings" for the Debtor's four months of post-petition service. However, as discussed in the next section, his additional work after the petition date did maintain and protect his right to potentially receive the severance payment, and the Court believes that under the circumstances it is appropriate to allocate a portion of the payment to that post-petition service.

The Debtor also argued that the severance payments constituted compensation for his agreement not to engage in activities in competition with SUA for two years after termination, and that non-competition occurred post-petition. For this, the Debtor relies on In re Haynes, 679 F.2d

---

[3]Some courts have held that, where the company had discretion under the pre-petition employment contract whether or not to make the post-petition severance or bonus payment, the payment was a mere 'expectancy' as of the petition date and not property of the estate. See Parks v. Dittmar (In re Dittmar), 618 F.3d 1199, 1209 (10th Cir. 2010) (collecting cases). One of the main cases relied upon by the Debtor, Sharp v. Dery, 253 B.R. 204 (E.D. Mich. 2000), dealt with a discretionary payment and was later distinguished by a court from the same district for that reason. In re Edmonds, 263 B.R. 828, 830-31 (E.D. Mich. 2001)(noting that "Sharp is distinguishable from the present case where the decision to issue profit sharing payments is not discretionary," and finding contingent interest in profit sharing plan was property of the estate). The SUA employment agreement at issue in this case provided no such discretion.

718 (7th Cir. 1982), arguing that the exemption in Section 541(a)(6) can cover even minimal obligations. In Haynes, the court found that, because of continuing obligations such as a duty to report for a physical examination once every four years and the continuing possibility of being recalled to active duty in time of war or national emergency, "military retirement pay is actually reduced compensation for reduced current services" and therefore could constitute earnings from post-petition service. 679 F.2d at 719. However, the duties in Haynes required affirmative acts by the debtor, and the Seventh Circuit has subsequently held that abstaining from action does not constitute a "service" under the statute. The Seventh Circuit Court of Appeals has noted that "courts have interpreted the postcommencement earnings exception extremely narrowly, holding that § 541(a)(6) excepts only earnings from services actually performed by an individual debtor after the date of commencement." In re Prince, 85 F.3d 314, 323 (7th Cir. 1996). In Stinnett v. Laplante (In re Stinnett), the court held that while "[d]isability payments may be intended to substitute for wages, … they are available only when the policyholder is incapable of 'performing services' in exchange for compensation, a necessary element of the exception under § 541(a)(6)." 465 F.3d 309, 313 (7th Cir. 2006). The court further noted that by the "plain language of the statute, earnings obtained solely by virtue of the inability to perform services cannot be considered the legal equivalent of 'earnings from services performed.'" Id. Under the same reasoning, not engaging in certain specified activities cannot be considered a 'service performed.' See, e.g., In re Laspina, 304 B.R. 814, (Bankr. S.D. Ohio 2004) (noting that "[r]egarding payments based upon non compete agreements, the majority view is that these payments are not excluded as earnings for post petition services performed," and collecting cases); In re Andrews, 80 F3d 906 (4th Cir. 1996) (finding that

"§541(a)(6)'s purpose, aided by its more plausible ordinary meaning, compels the conclusion that 'earnings from services performed' should not be construed to include payments made under" a noncompetition agreement).

The Debtor also argues that the severance payment was partially compensation for releasing his claims against SUA, which he did post-petition. However, the Court does not believe releasing a claim constitutes a "service" for purposes of Section 541(a)(6). Like an agreement not to compete, releasing a claim is essentially an agreement *not* to do something - not to bring a claim. Nor would a release or waiver be within the "plausible ordinary meaning" of the term "services performed." While the physical act of signing the release might have constituted an affirmative act, it does not rise anywhere near the level of even the minimal duties found sufficient in Haynes. In light of the narrower interpretation of the statute in the Seventh Circuit's more recent rulings in Prince and Stinnett, the Court cannot find that signing the release constituted a post-petition "service performed."

### B.    *Pro-Rata Allocation based on Pre- and Post-Petition Services*

On the other hand, the Debtor is correct that his four months of post-petition service was necessary to protect the right to the severance payment until it could be exercised. While some courts have found that a bonus or severance payment received post-petition should be characterized under an 'all-or-nothing' approach as compensation for pre- or post-petition services, other courts have found that, where some post-petition service is a condition to a pre-petition right, the interest should be divided between the estate and the debtor *pro rata* based on the ratio between the time the debtor worked under the employment agreement before the petition date and the time worked after

the petition date. For example, the court in In re Ryerson remanded the case to the lower court to make a *pro rata* allocation. F.2d 1423 (9th Cir. 1984). The argument for *pro rata* division was stronger in Ryerson, where the formula for the amount of the severance payment was based on the total length of service and therefore had clearly increased by the additional service post-petition, than here, where the size of the potential severance payment under the Debtor's employment contract did not change because of the post-petition work and would actually have decreased after December 31, 2009. However, in this district, Judge Schmetterer has held that a *pro rata* division is appropriate where the right to exercise an option had a required length of service before the right became exercisable, and some of that required service was performed post-petition. Allen v. Levey (In re Allen), 226 B.R. 857, 867 (Bankr. N.D. Ill. 1998). Thus, the court found that 89% of the proceeds of one option were property of the estate where 653 of the 731 days of the required two-year service for vesting were completed before the petition date. Id. at 868. However, for the other option, where the required 365 days of service were fully performed before the petition date, the court found that the proceeds of the option were 100% property of the estate. This was so even where the debtor had not exercised the option as of the date of the opinion one year later and where he would have lost the right to exercise it if he ceased his employment. Id. at 867-68. The court noted that, while it was true that the debtor could have chosen to terminate his employment at any time before exercising his rights and that then the estate would not have had any option rights, if he had so chosen to terminate his employment he would not have received the salary he received for that time. Id. In support of the authority to divide *pro rata*, the court noted that the actual value to the estate of the contingent rights was limited to the value of the debtor's interest as of the petition date. Id. at 867. This interest

was lessened by the probability and costs required to satisfy the contingency. Additionally, the court referred to a "*quantum meruit* theory" that focused on how the debtor's post-petition activities benefited the estate. Id.; see also In re Michener, 342 B.R. 428, 431-33 (Bankr. D. Del. 2006) (collecting cases both applying and criticizing the *quantum meruit* approach, and adopting the *quantum meriut* approach). Particularly in light of the Seventh Circuit Court of Appeals' ruling in In re Meyers, 616 F.3d 626 (7th Cir. 2010) (applying 'pro rata by days' method to allocate pre- and post-petition portion of tax refund where petition was filed in the middle of the tax year), the Court finds such a *pro rata* approach is appropriate in this case. The Court finds that of the $735,000 in severance payments received, 4.9%, or $35,976.67, were excluded from the estate under Section 541(a)(6) as proceeds constituting earnings for post-petition services. This determination is based on the ratio between (i) the days worked from the date of the employment agreement to the petition date and (ii) the days worked between the petition date and November 13, 2009 - the date by which the merger had occurred, the Debtor had signed the required waiver and the Debtor became fully entitled to the payment of the severance agreement.

**C.**     **Exemption**

In the Debtor's response, he argued that, even if the severance payment constituted property of the estate, he could claim a valid exemption in it as an "unemployment benefit" under 735 ILCS 5/12-1001(g)(3) or in 85% of the payment as "wages" under 735 ILCS 5/12-803. The Trustee countered in his reply that neither exemption applies to the severance payment at issue, and that even if it did, the Debtor should be estopped from asserting the exemption because he failed to disclose the right to the severance payment in his bankruptcy petition.

The Court need not address either argument at this time, however, since the issue is not properly in front of the Court. The Debtor raised the exemptions for the first time in his response to the Trustee's motion for turnover and has never listed the exemptions in Schedule C to his bankruptcy petition. The right to severance was not mentioned at all in the original petition, although he had not been terminated as of that date. The Debtor filed an amended Schedule C on April 16, 2010, which included a "Statement Regarding Amended Schedules," raising the argument that the severance payment was not property of the estate because his right had not vested as of the petition date, but made no reference to the Illinois exemption statutes in that filing.[4] Even if property is subject to a valid exemption, it is not automatically removed from the estate. Rather, the debtor must claim the exemption. Yonikus, 996 F.2d 866, 870 (7th Cir. 1993) (Section 522 "permits a debtor to remove from the estate whatever property is deemed exempt from execution under" state law.). Here, the Court has found that at least a portion of the severance payment was property of the estate, and the Debtor has not yet properly asserted an exemption under Illinois law, whether valid or not. Therefore it is still subject to turnover under Section 542(a).

Even if the Debtor were correct that he could assert an exemption, Section 542(a) is broad, and expressly covers even property "that the debtor may exempt under section 522." 11 U.S.C. §542(a). Therefore, the possible availability of an exemption is not relevant to the determination of whether turnover is required. If the Debtor believes that he can assert a valid exemption, he can file an amended schedule asserting the state exemptions, and under Fed. R. Bankr. P. 4003(b) the

---

[4] The docket entry for the amended schedule contains a notation by the Clerk of "Incorrect Event Entered, Filer Notified to Refile," but the document was never refiled by the Debtor. The Court makes no finding at this time as to the effectiveness of the filing.

amendment will restart the 30-day clock for the Trustee to file an objection to any such claim of exemption. Fed. R. Bankr. P. 1009(a) permits a debtor to amend a schedule "as a matter of course at any time before the case is closed." As the Trustee notes, under In re Yonikus, amendment may be denied upon a showing of bad faith, prejudice to third parties, or fraudulent concealment of an asset. 996 F.2d 866, 872 (7th Cir. 1993). The parties can fight over such issues at a later date if the Debtor decides to amend his schedules. For now, $699,023.33 of the severance proceeds is property of the estate and the Trustee has a right to demand its turnover.

## CONCLUSION

For the foregoing reasons, the Court finds that $699,023.33 of the $735,000 severance payment received by the Debtor constituted property of the estate not subject to an exemption properly claimed by the Debtor, and the Debtor shall deliver such amount to the Trustee in accordance with 11 U.S.C. §542(a).

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: April 21, 2011

_____
The Honorable Manuel Barbosa
United States Bankruptcy Judge