UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re Peter E. Jokiel, | Bankruptcy No. 09-B-27495 |
| Debtor. | Chapter 7 |
| | Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the objections of the Trustee and creditor CNA Financial Corporation ("CNA") to the Debtor's claim of exemption in a "Supplemental Executive Retirement Plan." For the reasons set forth herein, the Court grants the Trustee's and CNA's objection.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from CNA's Objection to Debtor's Claim of Exemption for the Supplemental Executive Retirement Plan, the Trustee's Objection to Debtor's Claimed Exemption of Supplemental Executive Retirement Plan, the Debtor's response, the Trustee's reply, CNA's reply, the Debtor's sur-reply, the Debtor's supplemental brief, the

Page 1 of 15

Trustee's sur-reply and CNA's sur-reply, and all attachments thereto.

The Debtor filed for protection under Chapter 7 of the Bankruptcy Code with this Court on July 29, 2009. The Debtor was an employee of CNA from 1981 until he resigned in 2001. Through his employment at CNA, he participated in two retirement plans: a general plan qualified under ERISA and eligible for favorable tax deferrals on contributions by CNA to the plan (the "General Plan"), and a supplemental executive retirement plan which was only available to a select group of highly paid executives (the "Supplemental Plan"). Since the Debtor's retirement from CNA in 2001, he has received, and continues to receive, monthly payments under the Supplemental Plan of $17,718.86. The Supplemental Plan was not qualified for favorable tax treatment under Section 401 of the Internal Revenue Code because it discriminated in favor of highly compensated employees and exceeded the maximum benefits under the Internal Revenue Code. 26 U.S.C. §401(a)(4), (16), (17). The Supplemental Plan itself stated that the purpose of the plan was to provide benefits in excess of the limitations in Section 415 of the Internal Revenue Code and the limitation on compensation in Section 401(a)(17). (CNA's Objection, Ex.A, at ¶1.2, ECF No. 27). The Supplemental Plan also expressly provided that CNA would make no provision for the funding of any benefits payable under the Supplemental Plan, and that in the event the company decided to establish any reserve, such reserve "shall remain a part of the general assets of the Company, subject to claims of the Company's creditors." (CNA's Objection, Ex.A, at ¶5.1, ECF No. 27). The Supplemental Plan was therefore a so-called "top hat" employee benefit plan, because it was "unfunded" and "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." Cogan v.

Phoenix Life Ins. Co., 310 F.3d 238, 242 (1st Cir. 2002)(citing 29 U.S.C. §1101(a)(1)). Because of this, the plan was not subject to certain key provisions of ERISA, such as the requirement for minimum funding of the plan and liability for contributions, the restriction on assignment or alienation of plan benefits, the imposition of a trust on plan assets, and the imposition of fiduciary duties on the administrators or other 'fiduciaries' of the plan.

In addition to being the Debtor's former employer, CNA is also his largest creditor. According to the Debtor's bankruptcy schedules, of his $2,819,291.10 in liabilities, $2,776,415.16 is owed to CNA.[1] This debt primarily arises out of a loan of $1,649,986.24 extended by CNA in October 1998 for the purpose of investing in CNA stock. The Debtor alleges that his bankruptcy was caused by the loan coming due in October 2008, at a time that the value of CNA stock had plummeted. The Debtor alleged in his bankruptcy schedules that the CNA stock was valued at $690,527.04 as of the petition date.[2]

The Debtor did not list his interest in the CNA General Plan as an asset in his original bankruptcy schedules. However, he filed an Amended Schedule B and C on April 16, 2010, listing a "CNA Pension" of "unknown" value and asserting an exemption in 100% of the asset under 735 ILCS 5/12-1006.[3] The Trustee and CNA apparently do not object to the claim of exemption in the

---

[1] CNA filed a proof of claim, listing the amount as "at least $5,520,261.37" and claiming that $2,629,527 of the claim constituted a claim for breach of a retirement agreement. The precise size and nature of CNA's claim is not relevant to the determination of the objection to exemption, and the Court makes no finding on the issue.

[2] CNA's proof of claim listed the value of the stock as "TBD." Again, the precise value of the CNA stock is not relevant to the determination of the objection to exemption, and the Court makes no finding on the issue.

[3] The docket entry for the amended schedule contains a notation by the Clerk of "Incorrect Event Entered, Filer Notified to Refile," but the document was never refiled by the Debtor. The Court makes no finding at this time as to the effectiveness of the filing.

General Plan, but do object to the exemption in the Supplemental Plan. The Debtor listed the CNA Supplemental Plan in his original bankruptcy schedules, again listing the value as "unknown" and asserting an exemption in 100% of the asset under 735 ILCS 5/12-1006. In addition to the claim of exemption under the Illinois statute, the April 2010 Amended Schedule included a "Statement Regarding Amended Schedules" in which the Debtor argued that the interest in the Supplemental Plan was not property of the estate under 11 U.S.C. §541(c)(2) because the plan was subject to a valid anti-alienation clause.

CNA filed an objection to the claim of exemption in the Supplemental Plan on October 15, 2009, which was joined by the Trustee when he filed his own objection on June 9, 2010.[4] CNA and the Trustee argue that 735 ILCS 5/12-1006 does not apply to the Supplemental Plan because it was not "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code," 735 ILCS 5/12-1006(a), and argue that 11 U.S.C. §541(c)(2) does not apply to the Supplemental Plan because it was unfunded and therefore did not constitute a beneficial interest "in a trust." CNA and the Trustee bear the burden of proving that the Debtor's exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c).

## DISCUSSION

### A.    735 ILCS 5/12-1006

735 ILCS 5/12-1006 provides an exemption in a debtor's interest in a retirement plan only if the plan "is intended in good faith to qualify as a retirement plan under applicable provisions of

---

[4]The Trustee had filed motions and received orders extending the time to file an objection to claim of exemption, which were issued on October 15, 2009, December 17, 2009, February 11, 2010, and April 8, 2010, and ultimately extended the deadline to file an objection through June 14, 2010.

the Internal Revenue Code of 1986, as now or hereafter amended." 735 ILCS 5/12-1006(a). Unlike the parallel exemption in the federal set of exemptions, 11 U.S.C. §522(d)(E), which states that a pension or retirement plan is not exempt if it "does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code," the Illinois statute does not refer to a specific section of the Internal Revenue Code. From this, the Debtor argues that the Illinois exemption is intended to cover a broader group of so-called retirement plans. The Debtor argues that, because there is no specific reference to a code section, the Illinois statute was intended to refer to the term "retirement plan" as used throughout the Internal Revenue Code. The term is not specifically defined in the Internal Revenue Code, and is frequently used generally to refer to a plan, whether it qualifies for special tax treatment or not.

However, the Illinois statute does not state that it exempts retirement plans "as defined in" the Internal Revenue Code. It says it exempts retirement plans that are intended in good faith to "qualify" under the applicable provisions of the tax code. Numerous provisions of the Internal Revenue Code contain lists of criteria that must be met for a certain type of asset to qualify for some form of special tax treatment. The Court concludes that the Illinois exemption only applies to retirement plans that are intended to qualify for one or more such forms of preferred tax treatment. See, e.g., In re Ellis, 274 B.R. 782, 787 (Bankr. S.D. Ill. 2002) (Meyers, J.) ("To be eligible for exemption under § 12–1006, then, an annuity must come within the Internal Revenue Code provisions for tax-qualified retirement plans.").

For example, the title of Section 401 of the Internal Revenue Code is "Qualified pension, profit-sharing, and stock bonus plans." Subsection (a) is titled "Requirements for qualification," and

subsection (a) states that "[a] trust[5] created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section" only if it satisfies the enumerated 37 criteria. The Debtor has admitted that the Supplemental Plan at issue did not qualify under 26 U.S.C. §401, because it violated the anti-discrimination provision in Section 401(a)(4), and because it provided "retirement benefits in excess of those benefits that would be allowed under a [qualified] retirement plan [as] described in Section 401(a)(17)." (D's Resp., p.2, ECF No. 88).

While the Internal Revenue Code does not define "retirement plan," the Illinois exemption statute does. It defines "Retirement plan" to include the following:

(1) a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;
(2) a government or church retirement plan or contract;
(3) an individual retirement annuity or individual retirement account; and
(4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

735 ILSC 5/12-1006(b). As noted above, 26 U.S.C. §401, titled "Qualified pension, profit-sharing, and stock bonus plans," corresponds to the first three asset types in 735 ILCS 5/12-1006(b)(1), and contains a list of requirements that the Supplemental Plan does not satisfy. There are corresponding sections in the Internal Revenue Code with lists of qualifying requirements for employee annuities, 26 U.S.C. §403, individual retirement accounts, 26 U.S.C. §408(a), and individual retirement annuities, 26 U.S.C. §408(b). "Government plan" and "Church plan" are defined in 26 U.S.C. §414.

---

[5]As noted below, the Debtor has not demonstrated that the Supplemental Plan was or included a "trust," which is an additional reason it would not qualify under Section 401.

However, the Debtor has neither suggested nor provided evidence that the Supplemental Plan would fall within any of these other categories of retirement plans, or that it would satisfy the qualification requirements in such sections of the Internal Revenue Code. For example, while the Supplemental Plan is a promise to make future payments, it is not an employee annuity under 26 U.S.C. §403, since it was not "purchased by an employer for an employee." 26 U.S.C. §403(a)(1). Nor is it an "individual retirement annuity" under the Internal Revenue Code, since it was not "issued by an insurance company," 26 U.S.C. §408(b), or an "individual retirement account" since it is not a trust where the "trustee is a bank." 26 U.S.C. §408(a)(2).

The Debtor notes that the previously mentioned sections of the Internal Revenue Code focus on the tax effects on the employer or the plan itself -- whether the employer can deduct contributions it makes, and whether the plan or trust has taxable income on the appreciation of funds it is holding -- and questions why the Illinois legislature would have been concerned about the tax treatment for employers when exemption statutes are designed to protect debtors. However, it is likely that the Illinois legislature believed Congress made certain policy choices in drafting the sections dealing with retirement plans to encourage certain types of retirement plans with certain features, such as non-discrimination in favor of highly-paid executives and restrictions on early withdrawals. Congress encouraged these types of plans by providing tax benefits if the plan satisfied the enumerated qualifications. Benefits to either the employer or the employee would create incentives for employers to develop such plans and for employees to invest in them. It does not seem surprising that the Illinois legislature, generally agreeing with the policy choices made by Congress with respect to retirement plans, might have adopted and deferred to such policies by making such qualified plans

eligible for an exemption under state law. Moreover, the Internal Revenue Code already has detailed provisions and sets of qualifications, and it would be easier to cross-reference the federal statute than to design and draft new provisions. Nor is it surprising that the Illinois legislature would refer generally to the Internal Revenue Code rather than list specific code sections as Congress did in 11 U.S.C. §522(d)(E). The Internal Revenue Code is complex and changes frequently. When Congress amends the Internal Revenue Code, it can be expected make conforming changes to cross-references in other federal laws. In contrast, it would be difficult for the Illinois legislature to monitor changes in specific sections of federal law, and there could be a lag between when Congress changes a law and the Illinois legislature is able to make conforming changes in Illinois law.

The Debtor next argues that even if the Supplemental Plan did not qualify under the Internal Revenue Code, he is entitled to the exemption because the plan was "intended in good faith to qualify" under the tax code. First, it is important to note that by the clear language of the statute the intent must be to qualify under the tax code, and not simply that the plan was intended to be used for retirement. See, e.g., In re Ellis, 274 B.R. 782, 788 (Bankr. S.D. Ill. 2002) (noting that, while exemption statutes are normally construed liberally in favor of debtors, "even under a liberal construction, § 12–1006 cannot be extended to protect whatever a debtor unilaterally chooses to claim as intended for retirement purposes."). Such a broad interpretation could make substantially all of a debtor's assets, such as all bank accounts and and all investments, exempt merely upon a representation by the debtor that he hoped to use the asset for his retirement. Instead, the 'intended to qualify' provision is meant to protect debtors who intend to invest in qualified retirement plans that turn out to be nonqualified, either because of a technical defect in the structuring of a plan that

was intended to qualify, or because the debtor in good faith thought he was investing in a qualified plan because of representations made to him or because of his misunderstanding of the complexities of the Internal Revenue Code. Here, the Debtor has presented no evidence to support such an argument, and instead has presented evidence supporting the opposite conclusion. Attached to the Debtor's Response to the Debtor's Claim of Exemption is a hand-written set of questions from the Debtor to someone at CNA from around the time he invested in the CNA stock program in 1998, where he refers to the "top hat" plan as his "non-qualified savings plan" or his "non-qualified retirement fund," and a response from the company in the form of a printed Q & A, in which the company also refers to the plan as "non-qualified savings and pension assets." (D's Resp., Ex. 3, Ex. 5, ECF No. 88). The Debtor was therefore clearly on notice that the Supplemental Plan would not qualify for special tax treatment. Moreover, on the first page of the body of the Supplemental Plan documentation, it clearly states that the "purpose of the [Supplemental] Plan is to provide to retired participants ... benefits that would have been provided under the [General Plan] but for the limitations on benefits imposed under Section 415 of the [Internal Revenue] Code and the limitations on compensation for purposes of the [General Plan] imposed by Section 401(a)(17) of the Code." (CNA's Objection, Ex. A, ECF No. 27). This further demonstrates that the Debtor was aware that the Supplemental Plan would not qualify for special treatment under the Internal Revenue Code and nor was it intended to qualify. It is therefore clear that the Supplemental Plan was not "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code."

Finally, the Debtor argues that, even if the plan did not qualify for the Illinois exemption, CNA either lacks standing, has waived its right to object or should be estopped from objecting to the

claim of exemption because in the previously mentioned written Q&A, which CNA gave the Debtor before extending him a loan in 1998 to purchase stock in the company, CNA made a statement that if the Debtor "declare[d] personal bankruptcy," the "company cannot look to qualified and non-qualified savings and pension assets as an offset to satisfy the loan balance." (D's Resp., Ex. 3, ECF No. 88). However, first, even if CNA were estopped, the Trustee has also filed an objection to the claim of exemption, and the Trustee clearly has standing and has not waived his right to object. Second, even as to CNA estoppel would not apply, since the statement in the Q&A is not inconsistent with the relief CNA currently seeks or the arguments it is making. Such a statement says nothing about whether the Debtor could validly assert an exemption in pension assets. It only states that CNA will not exercise or has no right of setoff against the retirement assets. But, CNA is not seeking to set off payments it owes the Debtor under the plan against debts the Debtor owes the company. The company is objecting to a claim of exemption by the Debtor, asserting that the claimed exemption is not supported by law.

**B.**    **11 U.S.C. §541(c)(2)**

The Supplemental Plan documentation contains a provision stating that "No Payee may assign, anticipate or otherwise encumber any payment due him under this Plan. Any payment due to a payee under the Plan shall be exempt from the claims of his creditors." (CNA's Objection, Ex.A ¶5.7, ECF No. 27). The Debtor makes two arguments, either that the anti-alienation provision prevented the Debtor's interest in payments under the Supplemental Plan from becoming property of the estate, or that CNA should be estopped from claiming the interest is not exempt because it is a party to the Supplemental Plan agreement and is therefore bound by the language stating the

interest is exempt from the claims of creditors. Neither argument is persuasive.

A contractual anti-alienation clause is normally insufficient to prevent a payment right from becoming property of a bankruptcy estate. This is because 11 U.S.C. §541(c)(1) states that "Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— (A) that restricts or conditions transfer of such interest by the debtor." Thus, unless the exception in Section 541(c)(2) applies, the anti-alienation provision in the contract did not prevent the Debtor's interest in the Supplemental Plan from passing to the bankruptcy estate.

11 U.S.C. §541(c)(2) states that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."[6] The Debtor focuses on the language "enforceable under applicable nonbankruptcy law" to argue that the anti-alienation language in the Supplemental Plan documents operates to prevent the Debtor's interest in the Supplemental Plan from entering the bankruptcy estate. The problem is that the Debtor ignores the limitation in Section 541(c)(2) that it only applies to a "beneficial interest of the debtor *in a trust*." See, e.g., In re Weinhoeft, 275 F.3d 604, 605 (7th Cir. 2001) ("The $40,000 did not enter a trust, so § 541(c)(2) does not avail the Weinhoefts"); In re Lowe, 252 B.R. 614, 625 (Bankr. W.D.N.Y. 2000) ("More broadly speaking, exemption claims

---

[6]735 ILCS 5/12-1006(c) provides that a "retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, ... is conclusively presumed to be a spendthrift trust under the law of Illinois." Valid spendthrift trusts under state law are generally excluded from the estate under 11 U.S.C. § 541(c)(2). However, because, as discussed in the previous section, the Court finds the Supplemental Plan was not "intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code," 735 ILCS 5/12-1006(c) does not apply.

based solely upon anti-alienation provisions in mere contracts that are not themselves trusts, or that are not part of an overall, ERISA-qualified pension "package," have no force of law as against creditors or trustees."). "Trust" is not specifically defined in the Bankruptcy Code. However, the term is defined in the Restatement (Third) of Trusts as "a fiduciary relationship *with respect to property*, arising from a manifestation of intention to create that relationship and subjecting the person *who holds title to the property* to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." Restatement (Third) of Trusts §2 (emphasis added). Therefore, for a trust to be formed, there must be specific property or a 'res.' See, e.g., George Gleason Bogert et al., Bogert's Trusts & Trustees § 113 (2010) ("A present trust requires an existent property interest, and an existent property interest demands an existent subject of ownership."); Brainard v. Comm'r of Internal Revenue, 91 F.2d 880 (7th Cir. 1937) (finding that "an interest which has not come into existence or which has ceased to exist can not be held in trust" and therefore a declaration of a trust over an interest not in existence is at most a contract "to create a trust of an interest if he should thereafter acquire it"). Without a trust, Section 541(c)(2) does not apply.

However, the Debtor has identified no trust res or other indicia of a trust for the Supplemental Plan. The Supplemental Plan documentation expressly provided that CNA would make no provision for the funding of any benefits payable under the Supplemental Plan, and that in the event the company decided to establish any reserve, such reserve "shall remain a part of the general assets of the Company, subject to claims of the Company's creditors." (CNA's Objection, Ex.A, at ¶5.1, ECF No. 27). The Debtors provided no evidence that CNA ever established a reserve to fund the

Supplemental Plan. Nor was it required to do so under ERISA. Because the Supplemental Plan was "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," it was not subject to ERISA's funding requirements. 29 U.S.C. §1081(3). For the same reason, it was not subject to ERISA's establishment of a trust over plan assets. See 29 U.S.C. §§1101(a)(1), 1103. With no specific 'res' or trust 'corpus,' the plan was therefore only a contractual obligation of CNA to make future payments to the Debtor, and did not constitute an interest in a trust. See, e.g., In re Lowe, 252 B.R. 614, 624 (Bankr. W.D.N.Y. 2000) ("Moreover, there does not appear to be a trust here at all, but rather this Plan simply provides additional, deferred compensation paid by the employer."). Therefore, it did not satisfy the plain language of Section 541(c)(2). The Court cannot accept the Debtor's argument that 541(c)(2) applies to any right to payment subject to a valid anti-alienation clause. See, e.g., In re Simon, 170 B.R. 999, 1002 (Bankr. S.D. Ill. 1994) (finding that, despite antiassignment language in agreement, payments under structured settlement were mere contractual right with no "indicia of trust" such as an "identifiable trust res" and therefore Section 541(c)(2) did not apply). Such a reading would treat the words "beneficial interest ... in a trust" in Section 541(c)(2) as surplusage, and would make Section 541(c)(1)(A) meaningless.[7]

While Section 541(c)(2) is most often asserted to exclude a valid spendthrift trust under state law, the Supreme Court has held that "applicable nonbankruptcy law" for purposes of Section

---

[7] The only case that the Debtor cites is Morter v. Farm Credit Services, 937 F.2d 354 (7th Cir. 1991), which the Debtor argues stands for the proposition that 541(c)(2) does not require "a traditional trust to make a retirement plan a spendthrift trust." But, the plan in Morter contained an identifiable trust corpus. The court described that "when a participant retires, TIAA applies preretirement contributions to purchase a fixed annuity contract for the participant's benefit." 937 F.2d at 355. Moreover, the court in Morter ultimately found that the assets at issue were express trusts. 937 F.2d at 359.

541(c)(2) can include applicable federal law, including ERISA. Patterson v. Shumate, 504 U.S. 753, 758, 112 S. Ct. 2242, 2246 (1992). Therefore, the Court found that, for "an ERISA-qualified pension plan ... Section 206(d)(1) of ERISA, which states that '[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated,' 29 U.S.C. § 1056(d)(1), clearly imposes a 'restriction on the transfer' of a debtor's 'beneficial interest' in the trust," and therefore the plan interest was excluded from the estate under Section 541(c)(2). Shumate, 504 U.S. at 757-759, 112 S. Ct. at 2246-47. The problem here, though, is that the Supplemental Plan is *not* a 'qualified' ERISA plan. While 29 U.S.C. §1103 imposes a trust on plan assets and 29 U.S.C. §1051, restricts the assignment or alienation of plan benefits, neither of those provisions applies to "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," and therefore neither provision applies to the Supplemental Plan. 29 U.S.C. §§1051(2), 1101(a)(1).[8] Therefore, Shumate is easily distinguishable, and does not support the Debtor's argument that the Supplemental Plan is excluded under Section 541(c)(2).

Again the Debtor raises a waiver or estoppel argument, arguing that CNA should not be allowed to object because it is bound by the anti-alienation language in the Supplemental Plan, to which it is a party. But this argument fails for the same reasons as the Debtor's estoppel argument in connection with the stock purchase loan. First, even if CNA were estopped from raising an

---

[8] Since the Debtor's interest in the Supplemental Plan would neither be excluded nor exempted from the bankruptcy estate under ERISA, 11 U.S.C. §541(c)(2) or 735 ILCS 5/12-1006, the Court need not address the parties' contention as to whether any portion of 735 ILCS 5/12-1006 is preempted by ERISA. See In re Weinhoeft, 275 F.3d 604, 605 (7th Cir. 2001) ("Illinois provides that retirement plans are exempt from creditors' claims. 735 ILCS § 5/12-1006. To the extent that this statute speaks to pensions regulated by ERISA it is preempted (but redundant); to the extent it deals with individual retirement accounts, church plans, and other assets outside the scope of ERISA, it is not preempted.").

objection, the Trustee has also filed an objection. Second, CNA is not asserting a direct interest, such as a security interest, in the Supplemental Plan payments. It is objecting to the Debtor's claim of exemption as not supported by law. The Debtor has cited no case law or authority for the proposition that a creditor, in its capacity as a general unsecured creditor, should be barred from distribution of proceeds of the estate traceable to estate property in which the creditor had waived its right to collect. Even if that were the case, it would not mean that CNA had no standing to object to the claim of exemption. Even if it were barred from a *pro rata* distribution from the Supplemental Plan, the resolution of the objection could still affect its ultimate distribution. Distribution to other creditors from proceeds of the Supplemental Plan who had not waived their right would free up other estate property in which CNA had not waived its right to distribution, and therefore the objection could still increase CNA's right to a dividend from the estate.

## CONCLUSION

For the foregoing reasons, the Court grants the Trustee's and CNA's objection, and finds that the Debtor's interest in the Supplemental Plan is neither excluded from the estate under 11 U.S.C. §541(c)(2) nor exempt under 725 ILCS 5/12-1006.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: April 21, 2011

The Honorable Manuel Barbosa
United States Bankruptcy Judge